**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ARTURO PEREZ,** | ) | |
| **ID # 44470-177,** | ) | |
| **Movant,** | ) | **No. 3:14-CV-1213-N (BH)** |
| **vs.** | ) | **(No. 3:12-CR-0133-N (01))** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| **Respondent.** | ) | **Referred to U.S. Magistrate Judge** |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order 3-251*, this case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received April 4, 2014 (doc. 2), should be **DENIED** with prejudice.

## I. BACKGROUND

Arturo Perez (Movant) challenges his federal conviction and sentence in Cause No. 3:12-CR-133-N. The respondent is the United States of America (Government).

### A. <u>Plea</u>

On May 1, 2012, Movant and seven co-defendants were indicted for conspiracy to possess with intent to distribute a Schedule II controlled substance in violation of 21 U.S.C. § 846 (count one), and for aiding and abetting the distribution of a Schedule II controlled substance (counts two through four), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C)(2). (*See* No. 3:12-CR-133-N, doc. 1.) On November 2, 2012, Movant pled guilty to count one of the indictment pursuant to a plea agreement. (*Id.*, docs. 96, 104.) In a Factual Resume, he admitted that he conspired with others to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine as alleged in count one of the indictment. (*Id.*, doc. 98.) He also admitted that during the course of

the conspiracy, a Dallas Police Department undercover officer negotiated and purchased multiple types of narcotics from him and/or others working on his behalf, including on or about July 1, 2010, and on November 4, 2010. (*Id.*) In the written plea agreement, Movant stated he understood his rights and waived his rights, including the right to appeal, subject to the exceptions listed in the agreement. (*Id.*, doc. 96 at 1, 4.) He confirmed that he reached the decision to plead guilty knowingly and voluntarily, having "thoroughly reviewed all legal and factual aspects of [his] case with his lawyer," and that he was fully satisfied with counsel. (*Id*. at 4) He admitted that "the factual resume [he] signed is true and will be submitted as evidence." (*Id*. at 1.)

On November 2, 2012, Movant, his attorney, and a duly-sworn Spanish language interpreter appeared for his guilty plea. (*Id*., doc. 241.) Under oath, Movant stated that he understood the charges against him, and he admitted he committed the offense. (*Id*. at 8-9). He understood the factual resume and the written plea agreement, which were read to him in Spanish before he signed them. (*Id*. at 10, 13.) He understood his rights and knew that a guilty plea waived his rights, including the right to appeal. (*Id*. at 5-8.) Outside of the written plea agreement, no one had made any promise or assurance to him of any kind in an effort to convince him to plead guilty. (*Id*. at 10.) He understood the judge's authority to determine the sentence and the role of the advisory guidelines, and he knew that he could not rely on promises or assurances from anyone as to the sentence he would receive. (*Id*. at 6-8.) He knew that he faced a statutory minimum of five years and a statutory maximum of forty years in prison. (*Id*. at 11-12.) He understood that he waived his appellate rights, subject to the exceptions listed in the agreement. (*Id*. at 12-13.) The Court accepted Movant's guilty plea based on the finding that it was knowing and voluntary, and supported by an independent basis in fact containing each of the essential elements of the offense charged in count

one. (*Id*., doc. 145.)

**B. <u>Sentencing</u>**

The probation office prepared a presentence report (PSR) containing a section on offense conduct that set out Movant's numerous drug transactions involving cocaine, cocaine base, and methamphetamine. (*Id*., doc. 177 at 9-37.) The drug quantities were calculated as the equivalent of 4,304.1 kilograms of marijuana, resulting in a base offense level of 34. (*Id*. at 50, 56.) The PSR also included enhancements for possessing firearms during the offense, maintaining premises for drug trafficking, and playing a leadership role in the offense. (*Id*. at 57-58, 60.) After a three-level reduction for acceptance of responsibility, the PSR reflected a total offense level of 39. (*Id.* at 64-66.) Combined with a criminal history category of III, the applicable guideline sentencing range was 324 to 405 months. (*Id*. at 99.)

Movant, through his attorney, objected to all three enhancements (*id.*, doc. 182), but the probation office disagreed and recommended no changes to the guideline range in the addendum to the PSR (*id.*, doc. 189 at 1-3). Movant also moved for a downward variance, arguing that his criminal history was overstated, the calculated range of 324 to 405 months was unfair in comparison to his co-defendants' sentences, and the calculated drug quantity included transactions instigated by the investigating agents in hopes of receiving larger amounts of drugs that never materialized. (*Id.*, doc. 195 at 1-4.) The Government also moved for a two-level downward departure based on Movant's substantial assistance. (*Id.*, doc. 194 at 1-5.) Movant's objections were overruled, and the PSR and addendum were adopted. (*Id.*, doc. 199 at 1.) The Government's motion for downward departure and Movant's motion for downward variance were granted, resulting in a revised guideline range of 210 to 262 months. (*Id.*, doc. 242 at 5.) The Court sentenced Movant to 210 months'

imprisonment. (*Id*. at 6; doc. 198 at 2). He did not file a direct appeal.

**C. Substantive Claims**

Movant's § 2255 motion, filed April 4, 2014, raises the following grounds:

(1) His guilty plea was involuntary because counsel coerced him into waiving his rights, including his appellate rights, and told him that the sentence would be 36 months, but no more than 60 months, and counsel was ineffective for the same reasons;

(2) There was no evidence that he participated in the offense;

(3) Counsel was ineffective for failing to object to false and inaccurate information in the presentence report; and

(4) Counsel failed to timely file a notice of appeal.[1]

(doc. 2.) The Government filed a response on May 30, 2014. (doc. 8.) Movant filed a reply brief on August 4, 2014. (doc. 11.)

**D. Evidentiary hearing**

On February 24, 2016, an evidentiary hearing was held on the failure to timely file a notice of appeal claim. Movant and his trial counsel both testified.

According to Movant, he was able to communicate with counsel in Spanish. At the conclusion of the sentencing hearing, he told counsel he wanted to appeal, and counsel said he would appeal. He thought counsel had filed an appeal. A few days after sentencing, Movant called counsel twice to make sure an appeal had been filed and was told he was not in the office. Before the appellate deadline passed, Movant was told by counsel's office staff that he was no longer Movant's attorney. Movant wrote to counsel about the status of the appeal, but counsel did not

---

[1] Ground four also alleges ineffective assistance of counsel during the plea bargaining proceedings, plea hearing, presentence report, sentencing hearing, and appeal process. The only specific instances of deficient performance that Movant alleges and argues, however, are that counsel coerced him into waiving his rights, told him he would receive a specific sentence, failed to object to the presentence report, and failed to appeal.

respond. He sent another letter to counsel asking for a transcript, but he did not receive a response. Movant's mother called counsel, and a friend went to counsel's office to check on the status of the appeal. Before the time to appeal expired, counsel said he was no longer Movant's attorney. Movant then discovered the appellate deadline had passed. Although Movant wanted to appeal, a notice of appeal was not filed.

Counsel testified that he was able to communicate with Movant in Spanish. He went over the plea agreement and appellate waiver with him, and Movant did not indicate any lack of understanding. He would not have let Movant sign the plea agreement if he did not understand it. At sentencing, Movant was emotional but seemed to understand the proceedings. After sentencing, counsel spoke with Movant for about five to fifteen minutes. They talked about his appellate rights, and counsel said he saw nothing appealable. Movant said he understood, and he did not ask counsel to file an appeal. Instead, he asked about the return of his property. Movant never told counsel he wanted to appeal. If Movant had expressed a desire to appeal, counsel would have filed a notice of appeal. Counsel recalled someone called his office about the return of Movant's property, but he did not remember any call regarding an appeal or transcript.

## II. SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

## III. VOLUNTARINESS OF PLEA

Movant contends that his plea was involuntary because counsel coerced him into signing a plea agreement in which he waived rights that he did not want to waive, such as the right to appeal, and because he mislead him into believing that he would receive "a sentence of no more than sixty (60) months" and "that he was entering a guilty plea of thirty-six (36) months of imprisonment." (doc. 2 at 5, 11.)

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998)

(a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent'") (quoting *Brady*, 397 U.S. at 748). A plea induced by threats, improper promises, deception, or misrepresentation is not voluntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly. It requires "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625,

627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

## A. Coercion

Movant contends counsel coerced him into waiving his rights, including his appellate rights.

Through an interpreter, Movant testified that the factual resume and the plea agreement had been read to him in Spanish. (*See* No. 3:12-CR-133-N, doc. 241 at 8-9, 10, 13.) He understood the charge against him. (*Id.* at 9.) Movant's factual resume admitted his involvement in the charged conspiracy, including his commission of two specific drug transactions on July 1 and November 4, 2010. (*Id.*, doc. 98 at 2.) His written plea agreement stated he understood his rights and waived his

rights, including the right to appeal, subject to the exceptions listed in the agreement. (*Id.,* doc. 96 at 1, 4.) He testified that he understood his rights and knew that a guilty plea waived his rights, including the right to appeal. (*Id*., doc. 241 at 5-8.)

Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). They must also overcome the presumption of regularity and "great weight" accorded court records. *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").

Movant has failed to overcome the presumption of veracity given to his sworn statements in court, and the presumption of affording great evidentiary weight to court records. *See Blackledge*, 431 U.S. at 73-74. His vague and conclusory assertions are not evidence of coercion. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("[M]ere conclusory allegations do not raise a constitutional issue in a habeas proceeding."). His sworn statements in open court and the plea documents contradict his claim that he was coerced into waiving his rights, including his right to appeal. *See id*. Movant has not shown that his guilty plea was involuntary due to any coercion involving the waiver of his rights, or that he is entitled to relief on this ground.

**B. <u>Promise</u>**

Movant submitted a declaration stating that "my defense attorney . . . told me specifically

that I was signing an agreement with the Government in where I will spend Thirty six months in prison or at the worst case scenario Sixty months." (*See* doc. 3 at 3.) He does not otherwise provide any support for these allegations, such as any independent affidavits or documentary evidence.

Movant's written plea agreement acknowledged that the statutory minimum sentence was least five years; that the Court, not the government or his attorney, retained sole discretion to decide the sentence; that he would not be allowed to withdraw his plea if the guideline range or the sentence turned out to be higher than he expected; that his plea was not the result of promises made to him; and that there were no guarantees or promises from anyone as to what sentence the Court would impose. (*See* No. 3:12-CR-133-N, doc. 96 at 1-7.) Movant affirmed under oath at his re-arraignment that no one had induced him to plead guilty, that he had discussed the sentencing guidelines with his attorney, that he understood that he should not rely on any statements because the judge would assess punishment, and that he faced a statutory minimum sentence of five years (sixty months) and a statutory maximum of forty years. (*Id*., doc. 241 at 11-12.) Rather than express disagreement or confusion with the terms of the agreement, he assured the Court that he understood and approved them. (*Id.* at 10.)

The Fifth Circuit has recognized a limited circumstance in which a movant may seek habeas relief on the basis that his attorney made alleged promises to him, even though inconsistent with representations he made in court when entering his plea. A movant is entitled to an evidentiary hearing if he presents evidence of the exact terms of the alleged promise; exactly when, where, and by whom the promise was made; and the precise identity of an eyewitness to the promise. *See Cervantes*, 132 F.3d at 1110 (citing *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989)). A

movant must produce independent indicia of the merit of the allegations of alleged promises, typically by way of affidavits from reliable third parties. *Id*. When the movant's "showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in light of other evidence in the record," there is no need for an evidentiary hearing. *Id*.

Here, Movant has not stated specifically where and when counsel made the promise that allegedly caused him to plead guilty, and he has not presented any independent evidence to support his claim. He only states generally that counsel told him he would get 36 months or "in the worst case scenario" 60 months. (Doc. 3 at 3.) Even where defendants on collateral review provide independent evidence, courts review whether that evidence specifically supports the claims regarding counsel's promises. *See United States v. Merrill*, 340 F. App'x 976, 978-79 (5th Cir. 2009) (holding that an affidavit from a girlfriend does not provide "independent indicia of the likely merit of [Movant's] claims" because it did not describe with any specificity where or when counsel made the alleged promise, and "more fatally" did not indicate that the girlfriend was in fact an eyewitness to any promise made directly to [Movant]); *United States v. Medrano*, 4:12-CV-741-A, 2013 WL 1092813, *4 (N.D. Tex. Mar. 15, 2013) (holding that "sparse" declarations by [Movant's] wife that counsel told her that he faced an 8-10 year sentence, and by their daughter that she heard counsel make this statement to her mother, were not sufficient to overcome the overwhelming evidence that [Movant] knew he faced a longer sentence and that no one had made promises to induce him to plead guilty).

Movant has failed to overcome the presumption of veracity given to his sworn statements in court, and the presumption of affording great evidentiary weight to court records. *See Blackledge*, 431 U.S. at 73-74. His sworn statements in open court and the plea documents contradict his claim

that he was promised a particular sentence. *See id*. Those statements reflect that Movant was not misled about the sentencing range and that he understood the sentencing consequences of his guilty plea. He has not shown that his guilty plea was involuntary due to any promise regarding his sentence or that he is entitled to relief on this ground.

**C. <u>Ineffective assistance of counsel</u>**

Movant contends counsel was ineffective by coercing him into waiving his rights and by misleading him about the sentence he would get.

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)). However, a "defendant's mere subjective understanding that he would receive a lesser sentence" does not render a plea involuntary. *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002).[2] The plea stands unless the expectation of a lesser sentence resulted from "a promise or guarantee by the court, the prosecutor or defense counsel." *Id.*

To successfully state a claim of ineffective assistance of counsel, a movant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.

---

[2] *Daniels* is not cited for any proposition potentially abrogated in *United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004) (abrogating reliance on a "significantly less harsh test" of prejudice for sentencing errors in the § 2255 context), to the extent that any such abrogation occurred. *See* 376 F.3d at 438 n.4 (specifically distinguishing *Daniel* because that case dealt with prejudice in the context of § 2254).

*See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice under *Strickland*, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Movants must "affirmatively prove prejudice." *Id.* at 693. The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations, furthermore, are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding"). In the context of a guilty plea, the *Strickland* "prejudice" requirement "focuses on whether counsel's constitutionally ineffective

performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). To satisfy this requirement, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 58.

As discussed, Movant has not shown that his plea was involuntary because his waiver of rights was coerced by counsel or because counsel promised him any particular sentence. His sworn statements in court and the plea documents contradict his claims of ineffective assistance of counsel regarding his guilty plea. *See Blackledge*, 431 U.S. at 73-74. He has not shown deficient performance or prejudice, or that he is entitled to relief on this ground.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Movant also alleges that he received ineffective assistance of counsel at the punishment phase and at the time to appeal.

### A. Presentence Report

Movant claims that counsel failed to object to purportedly false and inaccurate statements in the PSR. (Doc. 2 at 9, 20.) In order to obtain post-conviction relief due to ineffective assistance of counsel during the punishment phase of a non-capital case, a movant must satisfy the two-prong test established in *Strickland*. As noted above, he must demonstrate that counsel's performance fell below an objective standard of reasonable professional service. *Id.*, 466 U.S. at 687-88. Second, he must establish prejudice – that he was subjected to increased jail time due to the deficient performance of his attorney. *See United States v. Grammas,* 376 F.3d 433, 439 (5th Cir. 2004) (citing *Glover v. United States,* 531 U.S. 198, 203 (2001)).

Movant does not identify any false or inaccurate statements. His conclusory allegations are

insufficient to prove ineffective assistance of counsel. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). He also fails to specify any meritorious guideline objection that counsel should have raised. Counsel offered written and oral objections to the guideline enhancements and successfully moved for a downward variance. (*See* No. 3:12-CR-133-N, doc. 189; doc. 242 at 3, 5-6.) Movant has not shown that counsel was ineffective with regard to any alleged failure to object to the PSR.

**B. Notice of Appeal**

Movant contends defense counsel did not file an appeal on his behalf. (Doc. 2 at 9, 20.) His § 2255 motion does not allege that he ever asked counsel to pursue an appeal or that counsel failed to consult with him regarding an appeal. In his reply to the government's response on this issue, he claims that he expressed a desire to appeal his sentence and that counsel said he would visit Movant to discuss an appeal. (Doc. 11 at 4.) At the evidentiary hearing, Movant testified that at the conclusion of the sentencing hearing, he told counsel he wanted to appeal, and that counsel said he would appeal. Counsel testified that he discussed an appeal with Movant and told him he saw nothing to appeal. Movant understood, and he did not ask counsel to appeal. He only asked about the return of property.

"There is no constitutional right to appeal a criminal sentence." *United States v. Burns*, 433 F.3d 442, 445 (5th Cir. 2005) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Counsel "is not burdened by any general duty to perfect an appeal of every criminal conviction." *White v. Johnson*, 180 F.3d 648, 652 (5th Cir. 1999). Counsel's failure to pursue an appeal can amount to ineffective assistance under *Strickland*, however. *See United States v. Pham*, 722 F.3d 320, 323 (5th Cir. 2013) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 479-80 (2000)).

The assessment of deficient performance "begins with the question whether counsel

'consulted' with the defendant regarding an appeal." *Pham*, 722 F.3d at 323 (citation omitted). '"Consulting' is a term of art that means advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. (citation omitted). There is no constitutional requirement that counsel consult with the defendant about an appeal in every case. *Flores-Ortega*, 528 U.S. at 479-80. A constitutionally-imposed duty arises when there is reason to think that a rational defendant would want to appeal, such as when there are nonfrivolous grounds for appeal, or when the defendant has reasonably demonstrated to counsel that he is interested in appealing. *Id*. at 480.

A defendant can satisfy the prejudice prong by demonstrating that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, [defendant] would have timely appealed." *Id*. at 484. "[C]ourts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 477. "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Pham*, 722 F.3d at 323-24. If a defendant proves, by a preponderance of the evidence, that he directed his attorney to file an appeal and it was not filed, prejudice is presumed regardless of the merits and regardless of any appellate waiver. *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). When a defendant is denied the opportunity to appeal due to ineffective assistance of counsel, the defendant is entitled to an out-of-time appeal. *United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001).

Here, the record shows that on June 10, 2013, just over two months after sentencing, Movant submitted a *pro se* motion for the return of his property (*See* No. 3:12-CR-133-N, doc. 212), which

is consistent with counsel's testimony that Movant did not express any interest in appealing, and that he was concerned with the return of his property. Movant did not say anything about an appeal until he filed a motion on January 14, 2014, over nine months after sentencing, seeking documents and transcripts to prepare a § 2255 motion. The motion was Movant's first allegation that he lost the opportunity to appeal because of counsel. (*Id.,* doc. 233.) Additionally, he did not claim in his § 2255 motion that he told counsel to appeal; this allegation was made in his reply to the government's response. Based on the demeanor of the witnesses at the hearing, their respective roles, any apparent bias, inconsistencies in testimony, explanations for inconsistencies, and corroborating evidence, the Court finds more credible counsel's testimony that he and Movant discussed an appeal after the sentencing hearing, he expressed his opinion that there was nothing to appeal, and Movant did not state that he wanted to appeal. Movant has not proven by a preponderance of the evidence that he told counsel to appeal the criminal conviction.

Additionally, given the circumstances of this case, counsel had no reason to think Movant wanted to appeal. He entered a plea and admitted the facts of the offense; his guideline range on Count One greatly exceeded the 210-month sentence he ultimately received; and he avoided three other felony convictions for distribution of cocaine. Because Movant did not ask him to file an appeal, and considering Movant's appellate-rights waiver and the favorable sentence he received, counsel had no reason to think that a rational defendant would want to appeal. *See Flores-Ortega*, 528 U.S. at 480. Movant has failed to show he received ineffective assistance of counsel regarding an appeal.

## V. INSUFFICIENT EVIDENCE

Movant contends that there no evidence that he committed the offense. (*See* doc. 2 at 7.)

A claim of insufficiency of the evidence generally may not be raised in a motion under 28 U.S.C. § 2255. *See Forrester v. United States*, 456 F.2d 905, 907 (5th Cir, 1972) (challenge to sufficiency of the evidence to sustain a conviction is not cognizable in a collateral motion under § 2255) (citing *Kelley v. United States*, 350 F.2d 398, 399 (5th Cir. 1995)).

Additionally, this ground is also barred based on the appellate-rights waiver signed and agreed to by Movant. Movant voluntarily pled guilty and waived his right to appeal or file a collateral challenge to his conviction or sentence, except that he reserved his right to bring a direct appeal of a sentence exceeding the statutory maximum punishment or an arithmetic error at sentencing or a collateral proceeding challenging the voluntariness of his plea and waiver, and claims of ineffective assistance of counsel. (*See* No. 3:12-CR-133-N, doc. 242 at 4.) Generally, "an informed and voluntary waiver of post-conviction relief is effective to bar such relief." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam), *accord United States v. White,* 307 F.3d 336, 343 (5th Cir. 2002). "A defendant's waiver of [his] right to appeal is not informed if the defendant does not know the possible consequences of [the] decision." *United States v. Baty*, 980 F.2d 977, 979 (5th Cir. 1992). A defendant's waiver of the right to appeal requires special attention from the district court, and it is the district court's responsibility to ensure that a defendant fully understands his right to appeal and the consequences of waiving that right. *Id*. It is apparent from the above review of Movant's other claims that his plea of guilty and entry of the plea agreement was knowing and voluntary, and the appellate waiver is enforceable to bar this insufficiency of the evidence claim in this proceeding.

Finally, Movant's Factual Resume provided sufficient supporting evidence of the conspiracy:

> During the course of the conspiracy alleged in Count One of the indictment, Arturo Perez was a member of a drug trafficking organization located in the Northern

> District of Texas and elsewhere. Perez was involved in a conspiracy to possess with intent to distribute cocaine and other narcotics, with those individuals named in the indictment and others unknown.
>
> On numerous occasions during the course of the conspiracy, a Dallas Police Department undercover officer (UC) negotiated and purchased multiple types of narcotics from Perez and/or others working on his behalf. For example, on or about July 1, 2010, a UC called Perez and, through Debra Gonzalez, negotiated for, and ultimately purchased, a "Big Eight" (125 grams of cocaine), though the lab the cocaine at 123 grams.
>
> Thereafter, on November 4, 2010, after some negotiation calls and providing the UCs with a sample of cocaine at their house, Perez and Garza finalized the sale of a quarter of kilogram of cocaine to the UCs. Perez left his residence and entered a car driven by Nicandro Hernandez. After a few hours, Perez returned with Nicandro Hernandez, Roberto Soriano, and another unknown individual. Perez, Hernandez, and the unknown individual (carrying a sawed-off shotgun and the cocaine) entered the residence and met with the UCs. Soriano stayed on the front porch near the front door. The unknown individual handed the cocaine to Perez who gave it to one of the UCs. After the UCs confirmed the weight, they paid Perez.
>
> Perez agrees and stipulates that he did knowingly and intentionally conspire with others to distribute 500 grams or more a mixture or substance containing a detectable amount of cocaine as alleged in Count One of the Indictment.

(*See* No. 3:12-CR-133-N, doc. 98 at 2-3.)

This ground for relief should be dismissed because it is not cognizable on collateral review, because collateral review was waived, and alternatively, for lack of merit.

## VI. RECOMMENDATION

The Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 should be DENIED with prejudice.

**SO RECOMMENDED on this 31st day of May, 2016.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE